IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:11-CV-1-FL

| | |
|---|---|
| LUCILE WINSTON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-55, DE-63] pursuant to Fed. R. Civ. P. 12(c). Claimant Lucile Winston ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

**STATEMENT OF THE CASE**

Claimant filed an application for a period of disability and DIB on 9 November 2007, alleging disability beginning 1 October 2000. (R. 12). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 19 November 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 27-54). On 16 December 2009, the ALJ issued a decision denying

Claimant's request for benefits. (R. 9-22). On 29 October 2010, the Appeals Council denied Claimant's request for review. (R. 1-3). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges that the ALJ gave insufficient consideration to the disability decision by the Department of Veterans Affairs ("VA"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1.

## FACTUAL HISTORY

### I.   ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant had the following severe impairments: asthma, diabetes mellitus, a history of a pseudotumor cerebri, headaches, rheumatoid arthritis, hypertension, gastritis and obesity. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet

3

or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] involving simple, routine and repetitive tasks but could not perform tasks requiring any exposure to respiratory irritants or work in extremely cold temperatures. (R. 15-16). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 19). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 20). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 51 years old and unemployed. (R. 33). Claimant is a college graduate. (R. 34). Claimant served as a licensed practical nurse and medical records reviewer in the military. (R. 34). In 1995, Claimant was honorably discharged and placed on temporary retirement and eventually placed on permanent retirement due to health problems, which included polyarthritis, gastritis, hypertension and food allergies. (R. 35). Claimant

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

4

receives military VA benefits, has a 100 percent service connection rating and receives an unemployability payment. (R. 38).

Claimant explained numerous medical conditions support her disability claim and her inability to work full-time. These medical conditions include pseudotumor cerebri, gastritis, diabetes and arthritic pain associated with osteoarthritis. (R. 38-39, 48). Claimant testified that subsequent to retirement from the military, she began experiencing headaches every day, which eventually lead to a diagnosis for pseudotumor cerebri. (R. 36). Treatment for her headaches consists of undergoing spinal tap procedures every six months and medication. (R. 36). Claimant testified that the last spinal tap prevented headaches for approximately four to five months, at which time she began experiencing headaches up to three times per week. Claimant's headaches last anywhere between four and twenty-four hours, depending on the effectiveness of her medication. (R. 36). Symptoms associated with the headaches include dizziness, nausea, sensitivity to light and visual disturbances in the form of flashing lights. (R. 37). When Claimant experiences headaches, she retires to her bedroom, which is surrounded in darkness, and lays down. (R. 38, 44). Once Claimant's headache subsides, it takes approximately two hours before she is capable of returning to normal activities. (R. 45).

Claimant testified that symptoms associated with gastritis include bloating, distention of the abdomen and reflux, which she experiences on a daily basis. (R. 39). Claimant takes medication for diabetes, which has kept her blood sugar under control. (R. 39-40). Claimant also experiences arthritic pain in both hands and wrists, her right shoulder and her left knee, which is exacerbated by weather changes. (R. 40).

Claimant testified that when she experiences knee pain, she is unable to sit for more than 40

minutes or stand for more than 30 minutes. (R. 40, 42). Claimant wears braces on her wrists and experiences hand and wrist pain approximately three to four times a month. (R. 42). Claimant experiences difficulty when using buttons or zippers and opening cans. (R. 42). Claimant testified further to having asthma and explained she uses an inhaler three to four times per month. (R. 43-44). Claimant testified that on days she does not have a headache, she performs light housework. (R. 44). However, Claimant has difficulty vacuuming and mopping the floor as a result of hand pain. (R. 45).

### III.  Vocational Expert's Testimony at the Administrative Hearing

Andrew Beale testified as a VE at the administrative hearing. (R. 27). After the VE's testimony regarding Claimant's past work experience (R. 50-51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work involving simple, routine and repetitive tasks with nonexertional limitations that include no more than frequent fingering, handling and reaching, no more than frequent stooping, crouching, kneeling and crawling and no working in environments subject to cold temperature extremes or with respiratory irritants. (R. 51). The VE responded in the negative but testified that such a person could perform the requirements of the following representative occupations which exist in significant numbers regionally and nationally: (1) ticket taker (DOT #344.667-010); (2) counter clerk (DOT #295.367-026); and (3) laundry sorter (DOT #361.687-014). Next, the ALJ asked whether positions would be available if the hypothetical individual were unable to concentrate and maintain the ability to do simple, routine, repetitive tasks on a regular and continuous basis, to which the VE responded in the negative. (R. 52). Finally, the ALJ asked whether jobs could be performed by an individual

6

who missed work two or more days a month, to which the VE also responded in the negative. *Id.* The VE testified that his testimony was consistent with the Dictionary of Occupational Titles. (R. 53).

## DISCUSSION

### I. The ALJ's consideration of the VA's disability decision was proper.

Claimant contends the ALJ's consideration of the VA's disability decision was insufficient. Pl.'s Mem. at 4.

Although 20 C.F.R. § 404.1504 provides that a disability determination made by another governmental or non-governmental agency is not binding on the Commissioner, Social Security Ruling 06-03p clearly states that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." S.S.R. 06-03p, 2006 SSR LEXIS 5, at *17, 2006 WL 2329939, at *6; *see also* 20 C.F.R. § 404.1512(b)(5). The regulations cite "the Department of Veterans Affairs" as an example of an agency whose determination should be considered. S.S.R. 06-03p, 2006 SSR LEXIS 5, at *16, 2006 WL 2329939, at *6.

In a decision dated 23 August 1999, the VA determined Claimant was unemployable and entitled to service-connected disability compensation at the 100% rating level. (R. 207-11). Although the VA determination was not binding on the ALJ, the record reflects that the ALJ did not completely exclude it from consideration. Indeed, after acknowledging the VA decision, the ALJ stated as follows:

> [The] Depart. of Veterans Affairs (DVA) rated the claimant as 100% unemployable in August 1999 []. Regulation 20 CFR 404.1504 states that a determination of disability made by another government agency is not binding on the Social Security Administration. The [ALJ] finds that this assessment by the DVA used a rating system that is not compatible with the Social Security disability regulations and,

7

therefore, gives no weight to this opinion.

(R. 20). Claimant argues, however, the ALJ's consideration of the opinion was insufficient. Defendant contends that the ALJ properly considered the VA's disability determination, and moreover, "gave considerable weight to the medical examinations of the VA physicians, which is precisely his obligation in weighing physician evidence under the regulations [and] the ALJ used those records to assess [Claimant's] RFC." Def.'s Mem. Supp. Mot. J. Pleadings ("Def.'s Mem.") at 6. This court agrees.

In considering Claimant's RFC, the ALJ gave full consideration to the medical records from the Hampton, Virginia, Richmond, Virginia and Durham, North Carolina Veterans Administration Medical Centers ("VAMC"). (R. 17-19). First, the ALJ considered treatment records for asthma, which revealed Claimant did not have frequent acute asthmatic attacks, her lungs were usually clear, she did not have clinical signs of respiratory insufficiency such as cyanosis, clubbing or use of the accessory muscles of respiration and pulmonary function studies revealed an FEV1 ("Forced Expiratory Volume in One Second") level of 2.28% which was 74% of the predicted normal. (R. 17). Next, the ALJ discussed Claimant's treatment by the VAMC for diabetes mellitus and noted that Claimant's diabetes has been well-controlled with treatment without any complications. *Id.* The ALJ then discussed Claimant's diagnosis of pseudotumor cerebri, the headaches associated therewith and Claimant's later diagnosis of migraine headaches. (R. 17). The ALJ noted that Claimant's headaches were well-controlled with treatment, which included diamox, avert and gabapentin. (R. 17-18). The ALJ acknowledged a 2003 CT scan and a 2008 MRI, as well as numerous physical examinations performed between 2002 and 2005, which revealed Claimant had no focal neurological deficits. (R. 18). Finally, the ALJ noted Claimant had regular ophthalmological examinations,

which revealed normal visual acuity and visual fields. *Id.*

The ALJ also discussed VAMC records concerning Claimant's treatment for rheumatoid arthritis, hypertension and gastritis. *Id.* Regarding Claimant's arthritis and associated pain, the ALJ observed, *inter alia*, that a 26 October 2005 treatment record revealed Claimant had a full range of motion of the spine, mild pain on abduction of the right shoulder with a positive impingement sign but a full range of shoulder joint motion and good motor strength, mild tenderness of the left knee and a full range of knee joint motion. *Id.* The ALJ noted further that Claimant's functional status was "good." *Id.* The ALJ noted treatment records indicated Claimant's hypertension was "always well-controlled." *Id.* Finally, the ALJ noted that pathology results revealed a benign gastric ulcer, for which Claimant underwent conservative treatment, and that treatment records indicated Claimant did not develop any weight loss, anemia or complications from her gastrointestinal conditions. *Id.*

Claimant does not dispute the ALJ's consideration of the above evidence, and in fact, provides no factual summary of the medical records during the relevant time period, which exceed three hundred pages. Moreover, Claimant does not explain how the August 1999 VA disability decision supports a different RFC conclusion. As Defendant notes, the VA's disability decision cites no medical records nor does it state the impairment(s) supporting the decision. Def.'s Mem. at 7; (R. 210-11). Rather, it is essentially a form opinion, unaccompanied by any written report, which briefly discusses Claimant's age, education and employment history only. (R. 210). The remaining information contained therein concerns eligibility requirements for special monthly compensation and "Dependents' Educational Assistance," neither of which Claimant was found eligible. (R. 210-11). Thus, it is unclear what further consideration was warranted of the decision. Nevertheless, the court finds that the ALJ gave appropriate consideration to the VAMC treatment records during the

9

relevant time period, and based on those records, along with the ALJ's acknowledgment of the VA disability rating, is satisfied that the ALJ gave proper consideration to the VA's disability decision. *See Cobb-Leonard v. Astrue*, No. 3:10-CV-449-MOC-DCK, 2011 U.S. Dist. LEXIS 111717, at *11-12, 2011 WL 4498876, at *4-5 (W.D.N.C. Sept. 8, 2011) (finding the ALJ's acknowledgment of the VA's disability determination and observation that the VA's disability guidelines differ from those employed by the SSA, coupled with the ALJ's consideration of records from the VAMC, was sufficient consideration), adopted, 2011 U.S. Dist. LEXIS 111710 (W.D.N.C. Sept. 27, 2011); *Hargro v. Astrue*, No. 1:09-CV-19, 2010 U.S. Dist. LEXIS 30823, at *35, 2010 WL 1380144, at *11 (S.D. W. Va. Mar. 30, 2010) (holding the ALJ properly considered the VA decision where he "noted the [VA's] disability ratings and awards in his decision"). Accordingly, Claimant's assignment of error is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-55] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-63] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 9th day of December, 2011.

                                                                     Robert B. Jones, Jr.
                                                                     United States Magistrate Judge